***********
The undersigned have reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Glenn. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission hereby affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties were properly before the North Carolina Industrial Commission and the North Carolina Industrial Commission has jurisdiction of the parties and of the subject matter.
2. All parties have been correctly designated and there was no question as to misjoinder or non-joinder of parties.
3. That at all times relevant to this matter, an employer/employee relationship existed between plaintiff and defendant-employer.
4. That all times relevant to this matter the defendant-employer employed three or more employees and was subject to the Workers' Compensation Act.
5. That at all times relevant to this matter the defendant-employer had workers' compensation insurance coverage with Harleysville Insurance Company.
6. The issues before the Full Commission are:
(a) Whether Plaintiff sustained an injury by accident while in the course and scope of employment with defendant-employer?
(b) If so, what, if any, benefits is plaintiff entitled to recover under the North Carolina Workers' Compensation Act?
 ***********
The Pre-Trial Agreement along with its attachments and any stipulations that have been submitted by the parties are hereby incorporated by reference as though they were fully set out herein.
 ***********
Based on the credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACTS
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 49 years of age and provided a work history that included serving in the Airborne in the United States Army and working as a carpenter and drywall mechanic. Plaintiff also testified that he had a GED.
2. Plaintiff worked for several different periods of time for the defendant-employer as a drywall mechanic beginning in February 1998 and ending in June 2000.
3. In August 1998, plaintiff began working for the defendant-employer having returned from working on a family home project in Tennessee. Plaintiff was hired back initially as a framer and subsequently, promoted to superintendent. Plaintiff testified that he was earning $16.00 per hour for a 40-hour week and worked some overtime. He was working at the defendant-employer's project at an elementary school and the work was very heavy according to plaintiff. This job ended the second or third week of December 1998.
4. Plaintiff subsequently was assigned to a project at the Durham County Health Department that involved remodeling a reception and examination area. Plaintiff alleges that on or about December 30, 1998, he was working above ceiling level hanging drywall and framing when his partner, Tanya East, passed him a piece of drywall. Plaintiff stated that as he stood up, he hit his head on a piece of structural steel and experienced sharp pain throughout his neck and shoulders.
5. Plaintiff contended that due to headaches and pain, he and his partner concluded their work at approximately 1:00 p.m. and that as he lifted a bucket with tools to his shoulder he twisted, his left foot slipped and he experienced pain from his shoulder to his lower back and hip area.
6. Plaintiff returned home and asked Ms. East to contact the defendant-employer's president, Walter Tuttle. Plaintiff testified that Mr. Tuttle instructed Ms. East to take him to Raleigh Urgent Care.
7. Mr. Tuttle testified that he recalled the telephone conversation, but was only told that plaintiff stood up into a sprinkler head and that plaintiff asked to see Dr. Alan Mask at Raleigh Urgent Care Center.
8. According to the December 31, 1998 medical record of Raleigh Urgent Care Center, plaintiff reported "increased lifting drywall last 2-3 weeks now increased lower back pain" with an onset date of October 1998. There were no reports in the Raleigh Urgent Care Center of either of plaintiff's alleged accidents or specific traumatic incidents. In addition, the radiographic consultation form for December 31, 1998 stated under patient's history "lifting, sheetrock, pain for 2 months." Plaintiff was released to return to work with a lifting restriction of 20 pounds and was to return to Raleigh Urgent Care Center on January 4, 1998.
9. Plaintiff returned on January 4, 1999 and reported that he was somewhat better. Plaintiff was released to continue at light duty with no lifting greater than 20 pounds for two to three days with a return to regular duty without restrictions on January 7, 1999.
10. Plaintiff's visits to the Raleigh Urgent Care Center on December 31, 1998 and January 4, 1999 were both paid for with defendant-employer's credit card.
11. Plaintiff returned to work and in March 1999 left North Carolina to return to work on the family project in Tennessee. Plaintiff sought no medical treatment from January 4, 1999 through March 1999.
12. In June 1999, plaintiff returned to North Carolina and resumed employment with defendant-employer. Plaintiff alleged that he tried to work for Spectrum Interiors as a metal framer while in Tennessee, but only managed three to four weeks of work due to back pain. There were no medical records for any medical treatment received while in Tennessee.
13. Plaintiff alleged that he continued to report back pain to Mr. Tuttle while he continued to work through June 2000.
14. Plaintiff began chiropractic treatment with Dr. Kathryn Lyons on or about August 31, 1999. According to the confidential patient case history, plaintiff reported multiple symptoms and reported as his major complaint the loss of mobility due to pain in lower and middle back. He also reported right shoulder complaints. Plaintiff reported that he had these conditions for plus or minus ten years. Plaintiff also reported having been diagnosed with a pulled muscle in January 1999. Plaintiff also reported to Dr. Lyons that he jumped out of airplanes in the service and had been involved in several motor vehicle accidents, including two cars that rolled over and a head-on collision.
15. The medical records reflect that on December 2, 1999, plaintiff treated at Raleigh Urgent Care Center following a motor vehicle accident in which he pulled out in front of a car and was struck on the driver side and reported only a left head laceration.
16. Plaintiff saw Dr. Lyons on December 6, 1999 and reported the aforementioned motor vehicle accident. Dr. Lyons' note reflects that plaintiff hit the top of the doorframe with his head and he reported hurting in both his neck and hips. Dr. Lyons diagnosed plaintiff on December 6, 1999 with a new/acute injury to the cervical and lumbar spine.
17. Plaintiff alleged that in early 2000 he continued to complain to Mr. Tuttle about his condition. Furthermore, plaintiff had been working at a project at the Beth Shalom Synagogue and Mr. Tuttle testified that although it was not plaintiff's fault, the project "went south" and plaintiff retained bitter feelings.
18. During the spring of 2000, plaintiff began missing work and Mr. Tuttle requested work notes. Plaintiff provided a work note from Dr. Lyons dated June 30, 2000 which indicated a date of injury/illness of June 19, 2000 and at one part recommended the patient return to work with no limitations on June 30th and on another part stated the patient is totally incapacitated at the time and the patient would be re-evaluated on June 30th. Due to the confusion, Mr. Tuttle requested clarification and received a second note from Dr. Lyons, dated July 26, 2000, which indicated plaintiff could not work since June 30, 2000.
19. Plaintiff was terminated in June 2000. Plaintiff testified that he received unemployment compensation following his termination although he did not indicate the amounts.
20. Plaintiff last treated with Dr. Lyons on August 2, 2000.
21. Plaintiff was examined by Dr. T. Craig Derian, an orthopaedic surgeon, on May 31, 2001 and he diagnosed plaintiff with probable symptomatic lumbar degenerative disc disease. At his deposition, Dr. Derian opined plaintiff had cervical and lumbar disc degeneration prior to the alleged injury.
22. Dr. Derian further opined "He doesn't appear to have documentation at all of his impairment by — in an ordinary physician type of evaluation, so it's very hard for me, other than what the patient has said and what he says is a variety of different things. He says that he had five years of pain when he was first evaluated by a chiropractor in 1999, and then he says that the specific incident altered his symptoms in the neck area. On the other hand, he really doesn't look very impaired on evaluation. Now, I don't — think that his symptoms do relate to cervical and lumbar disc degeneration, but his symptoms appear by other reports to have started prior to this December 1998 incident. I think this incident may have contributed somewhat to his condition but it's hard for me to know whether that was part of the problem or whether his other physical activities, and other injuries that occurred, multiple motor vehicle accidents, as well as his previous military work — all this conspires against the disc to make it symptomatic."
23. Dr. Derian also pointed out in relation to the December 31, 1998 visit to Raleigh Urgent Care Center that ". . . when he went to the Urgent Care — when he went to the Urgent Care, there was not a — there did not appear to be from the physician basis a strong emphasis on neurosurgery or orthopaedic evaluation. There did not appear to be a strong emphasis to refer him. In other words, he went — underwent a real physician evaluation, not a chiropractor, and there wasn't — he didn't appear to have a serious problem that would — for which there was a referral to an orthopaedic surgeon or a neurosurgeon." Dr. Derian also concluded that ". . . that from my standpoint, Mr. Hall provided an inconsistent history and that he did not mention pre-existing back pain. He did not mention pre-existing motor vehicle accidents." And that "certainly motor vehicle accident could have contributed to any finding that occurred in an MRI scan done years after that."
24. On September 12, 2001, and subsequent to his examination by Dr. Derian, plaintiff sought treatment with Dr. John Oh, a physiatrist at UNC Hospitals. Plaintiff reported experiencing pain throughout his entire body and was diagnosed with chronic neck, mid back and low back pain with pain and paresthesia radiating down both lower extremities, of unclear etiology."
25. The daily work logs that were produced by the defendant-employer, in response to the Deputy Commissioner's Order, do not reflect complaints of back pain by plaintiff as alleged.
26. Plaintiff failed to prove by the greater weight of the competent evidence that he sustained an injury by accident or specific traumatic incident on December 30, 1998, which resulted in a compensable disability. At best, plaintiff reported an incident of striking his head to Mr. Tuttle on December 30, 1998 and received medical treatment on December 31, 1998 and January 4, 1999, although those records reflect that the medical treatment was not related to the injury reported to Mr. Tuttle.
27. The record establishes that plaintiff's medical bills and prescriptions were paid for by the defendant-employer and there is no evidence that plaintiff missed more than one day of work. Therefore, the defendant-employer was not required to file a Form 19 pursuant to N.C. Gen. Stat. § 97-92.
28. Plaintiff failed to prove by a greater weight of competent evidence that his chiropractic treatment, beginning on or about August 31, 1999, was due to injuries allegedly sustained on December 30, 1998.
29. Plaintiff failed to prove by the greater weight of the competent evidence that any alleged disability subsequent to his termination in June 2000 is due to any alleged injury sustained on December 30, 1998.
 ***********
Based on the foregoing Findings of Facts, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The plaintiff did not sustain an injury by accident arising out of and in the course and scope of his employment with defendant on December 30, 1998. N.C. Gen. Stat. § 97-2(6).
2. The plaintiff failed to carry the burden of proof to establish that he sustained an injury by accident arising out of and in the course of his employment with the defendant-employer on December 30, 1998. Since plaintiff failed to carry his burden of proof in this claim, he is not entitled to benefits under the Workers' Compensation Act.
 ***********
Based on the foregoing Findings of Facts and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. The plaintiff's claim is, and under the law must be DENIED.
2. Each side shall pay their own costs.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_____________ THOMAS J. BOLCH COMMISSIONER